**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LOUISE BLANYAR, *et al.*,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:15-1303** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **GENOVA PRODUCTS, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is the defendant's motion to dismiss the plaintiffs' complaint. (Doc. 8). Based upon the court's review of the materials related to the motion, as well as the court's consideration of the positions of the parties presented at oral argument on the matter, the defendant's motion will be granted and the plaintiffs' complaint dismissed without prejudice.

By way of relevant background, on May 15, 2015, the plaintiffs filed the instant purported class action in the Court of Common Pleas of Luzerne County. On July 1, 2015, the defendant removed the action to this court pursuant to the relevant provisions of the Class Action Fairness Act, as well as upon diversity jurisdiction, 28 U.S.C. §1332. (Doc. 1). A motion to dismiss the plaintiffs' complaint was filed on July 8, 2015, (Doc. 8), along with a brief in support thereof, (Doc. 9). The plaintiffs filed a brief in opposition to the defendant's motion on July 22, 2015. (Doc. 17). On August 10, 2015, the defendant filed a reply brief. (Doc. 19). At the request of counsel, oral argument on the motion to dismiss was held on September 21, 2015. The

court now considers the arguments raised by the parties in their materials relating to the motion to dismiss, as well as those presented at oral argument on the matter.

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544,

127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

The named plaintiffs in this action are Louise Blanyar, a former packer

at the defendant's Hazleton, Pennsylvania, plant from 1999 through 2004; Lawrence Buchman, a former machine operator at the Hazleton plant from 2000 to 2006; and Edward Yachera, a former molding machine operator and bundler at the Hazleton plant from 1977 to 1987. The plaintiffs bring this medical monitoring action on behalf of themselves and all others similarly situated alleging that they were exposed to toxic chemicals while employed at the defendant's Hazleton manufacturing plant.

In support of their claim, the plaintiffs allege that the defendant is a leading producer of plastic products used in the plumbing, rain gutter, decking, railing, lattice, fencing, marine and RV industries and specializes in the manufacture of vinyl pipes and rain gutters.[1] The defendant's Hazleton plant was established in 1975 and was one of the original industries in the Humboldlt Industrial Park located in Hazleton Township, Pennsylvania. At its height in the mid-1990's, the defendant's Hazleton plant employed as many as 240 workers in a variety of capacities, including, but not limited to, machine operators, production line workers, material handlers, mixers, dye setters, molding operators and packers. In late 2012, the defendant ceased operations in Hazleton, laying off approximately 60 employees and absorbing its Hazleton operations into its Minnesota, Nevada and Indiana plants.

The plaintiffs allege that they have recently discovered Material Safety

---

[1]As set forth above, the court accepts any factual allegations as true for purposes of the instant motion to dismiss.

and Data Sheets, ("MSDS"), which were not previously made accessible to them or other class members, that reveal that they have been exposed to known carcinogens and other toxic chemicals that are scientifically linked to various serious latent diseases or conditions. The plaintiffs further allege that there is limited information available as to the totality of the chemicals to which they have been exposed because the defendant claims that it does not maintain MSDSs for "articles", defined on the defendant's website as "molded and extruded plastic products such as PVC, CPVS, ABS, polyethylene, polypropylene pipe and fittings, Raingo, Regency or Repla-K vinyl gutter and downspout systems and Vinyl Fence products manufactured by Genova Products, Inc. and used under normal conditions . . ."[2] The plaintiffs allege, however, that MSDSs recently obtained by them reveal that materials used in the manufacture of the defendant's products, including many of the "articles" previously listed, did contain toxins subject to state and federal safety disclosure laws and which require special care when used.

According to the plaintiffs, the manufacture of certain of the defendant's products required direct exposure to pure VC and/or exposure to VC gases as a result of the further processing of fabricated products made wholly or in part from PVC at temperatures and for times sufficient to cause melting and

[2]This information was apparently obtained from the defendant's current website and there is no indication as to what information was provided on the defendant's website at the time of the plaintiffs' employment.

the release of VC gases. In addition, the plaintiffs believe that the manufacture of certain of the defendant's products also required exposure to other respirable toxins such as PVC dust and/or dermal toxins such as Styrene.

The plaintiffs allege that the defendant violated various state and federal laws, including the Occupational Safety and Health Administration, ("OSHA"), Hazard Communication Standard, by failing to retain and provide the plaintiffs with access to MSDSs informing them as to the totality of chemicals they were exposed to and a safe method for working with those chemicals. Additionally, the plaintiffs allege that the defendant violated various provisions of OSHA by failing to provide them with the requisite personal protective equipment needed to safely work with or around the subject chemicals.

The plaintiffs list sixteen toxic chemicals to which they allege they were exposed and claim that published peer-reviewed scientific studies have shown that substantial exposure to these chemicals is associated with increased incidences of various types of cancers and other chronic diseases and conditions as compared with the general population.[3] PVC, one of the most widely used plastic materials, is produced by polymerization of VC monomer, which the plaintiffs allege is a known carcinogen recognized as the cause of various forms of cancer in humans. In its natural state, VC is a

---

[3]The plaintiffs' allegations center mainly around their exposure to vinyl chloride ("VC") and polyvinyl chloride ("PVC").

colorless gas with a mild, sweet odor, making inhalation the primary route of occupational exposure. After polymerization, PVC is generally found in a white powder or resin form that can emit VC fumes when heated or manipulated during the manufacturing process. The plaintiffs allege that both VC and PVC are highly hazardous to one's health. The plaintiffs' complaint reflects that the United States Environmental Protection Agency, ("EPA"), and the World Health Organization International Agency for Research on Cancer, ("IARC"), have classified VC as a known (Group I) human carcinogen. Similarly, the Centers for Disease Control, ("CDC"), lists VC fourth on its "Substance Priority List", a bi-annual list which tracks the most commonly found substances determined to pose the most significant threat to human health due to known or suspected toxicity and the potential for human exposure.

Although the general population may be exposed to trace quantities of VC through air or groundwater, the plaintiffs allege that it is "well-documented" that occupational exposure, particularly in the plastics industry, accounts for substantive VC exposure rates. As a result, the OSHA sets strict industrial hygiene standards for manufacturers who work with or around VC. According to these standards, no employee may be directly exposed to liquid VC, exposed to VC at concentrations greater than five parts per million, ("ppm"), for more than fifteen minutes, or concentrations greater than one ppm averaged over an eight hour period.

According to the plaintiffs, the toxicity of VC and PVC is "well-studied" and "well-documented" in medical literature from around the world. Studies dating back to the 1980's have shown increased incidences of skin, lung, colon and thyroid cancer among workers who work with VC and PVC as compared with the general population. Controlled studies have shown that the respiration of PVC dust increases the chances of developing lung cancer by 20% each year for workers exposed to high levels of PVC particles. Similarly, both heated and unheated PVC resin dust has been linked to various respiratory conditions such as asthma, pneumoconiosis and interstitial pneumonitis. The plaintiffs further allege that occupational exposure to VC has also been linked to a 45-fold excess risk that a worker will develop angiosarcoma of the liver and a 5-fold excess risk of thereafter developing liver cancer. Similarly, occupational exposure to PVC has been reported to cause significantly increased incidences of testicular cancer having a median latency period of 22 years. Another study has shown that female workers in the plastics industry are at a disproportionately higher risk of developing breast cancer and reproductive conditions as a result of occupational exposure to toxic chemicals such as VC, Styrene, Acrylonitrile, Phthalates, Bisphenol-A (BPA), brominated flame retardants, heavy metals and solvents.

In addition to VC and PVC, the plaintiffs claim that other chemicals used at the defendant's Hazleton plant have been shown to be hazardous to the health of workers exposed at greater than normal background levels. Styrene,

for example, has been shown to cause mucus membrane irritation, gastrointestinal symptoms, dermatitis and central nervous system dysfunction. The plaintiffs claim that they have also been exposed to lead chromate, a known carcinogen that has also been linked to higher than normal risks of impaired kidney function, nervous system and neurobehavioral effects and cognitive dysfunction later in life.

The plaintiffs believe that a "multitude" of former employees of the defendant have developed chronic diseases or conditions, including, but not limited to, lung cancer, colon cancer, cervical cancer, melanoma, lung diseases, heart conditions, multiple sclerosis, hypothyroidism, loss of senses, skin rashes and various respiratory conditions, as a result of their occupational exposure.[4]

The plaintiffs allege that the defendant's fraudulent concealment and negligent misrepresentation as to the totality of the chemicals to which they have been exposed has substantially increased the risk that they and/or their cohabiting family members will develop serious latent diseases and conditions. The plaintiffs' complaint presents that diagnoses and early treatment for these and other occupational diseases and conditions is

---

[4]The plaintiffs do not challenge that a medical monitoring claim is "inapplicable to a situation where plaintiffs have already suffered compensable physical injuries." Slemmer v. McGlaughin Spray Foam Insulation, Inc., 955 F.Supp.2d 452 (E.D.Pa. 2013). Therefore, those individuals who have already suffered an injury could not be members of the instant action.

paramount for detecting and mitigating long term health consequences. Medical monitoring can identify abnormalities, such as in the case of cancer, cell mutations that are precursors for cancer. Such testing can increase the likelihood of early detection and reduce the mortality rate for the plaintiffs. In addition, medical monitoring for many of the cancers which the plaintiffs claim they are at particular risk of developing is highly specialized and different from the medical care normally recommended for other individuals of similar age and sex. Well-established and specialized medical monitoring procedures exist to provide for early diagnosis of and treatment for the subject diseases and conditions. According to the complaint, medical monitoring for the subject diseases and conditions is reasonably necessary to provide for early diagnosis, leading to significant benefits in treatment, management, rehabilitation and prevention or mitigation of long term health consequences.

The plaintiffs allege in their complaint that the applicable statute of limitations on their medical monitoring claim should be tolled under the theory of fraudulent concealment. To this extent, they allege that, since at least 1991, the defendant has been aware that chemicals and products it used at its Hazleton plant created occupational exposure to workers and their cohabiting family members and that the defendant has known or should have known that such exposure was unknown to the plaintiffs. Although the defendant has known that the plaintiffs have been exposed to known carcinogens and other dangerous chemicals, the plaintiffs allege that the

defendants did not take adequate precautions to prevent or limit exposure or warn the plaintiffs of their increased risk of contracting serious latent diseases. Thus, the plaintiffs argue that any applicable statute of limitations has been tolled by the defendant's knowledge and active concealment of the facts as they are alleged.

In their motion to dismiss the plaintiffs' complaint, the defendant argues that the plaintiffs' medical monitoring claim is, in fact, barred by the applicable statute of limitations and that the plaintiffs have failed to adequately plead fraudulent concealment. The defendant further argues that the plaintiffs have failed to adequately plead a medical monitoring claim.

The parties agree that the statute of limitations for a medical monitoring claim is two years. Barnes v. American Tobacco Co., 161 F.3d 127, 152 (3d Cir. 1998). Under Pennsylvania law, a medical monitoring claim accrues at the moment that an individual was "placed at a 'significantly increased risk of contracting a serious latent disease.'" Id. (quoting Redland Soccer v. Dep't of the Army, 696 A.2d 137, 145-46 (Pa. 1997)).

In this case, the purported class includes individuals who last worked at the Hazleton plant in 2009. There is no dispute the defendant's Hazleton plant closed in 2012. Therefore, no individual can claim exposure at the Hazleton plant after 2012. Absent an exception to the statute of limitations, the plaintiffs cannot timely assert a medical monitoring claim premised upon exposure that occurred during their employment at the Hazleton plant.

As indicated, the plaintiffs in this case allege in their complaint that the applicable statute of limitations should be tolled based on the theory of fraudulent concealment, which tolls the running of the statute of limitations due to a defendant's concealing conduct.[5] See Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). Under the fraudulent concealment theory, the statute of limitations will be tolled only "in clear cases of fraud, deception or concealment." Vojtasek v. Allentown, 916 A.2d 637, 640 (Pa. Super. 2006). If fraudulent concealment occurred, the statute of limitations does not commence "until the time of discovery or the date *when with reasonable diligence* one would have been led to discovery." Urland v. Merrell–Dow Pharmaceuticals, Inc., 822 F.2d 1268, 1274 (3d Cir. 1987) (emphasis in original).

To succeed on a fraudulent concealment theory, the plaintiffs must demonstrate: (1) that the defendant "actively misled" the plaintiffs; (2) that the defendant's misrepresentations prevented the plaintiffs from recognizing the validity of their claims within the limitations period; and (3) that the plaintiffs' ignorance of their claims is not the result of a "lack of reasonable due diligence to uncover the relevant facts." Cetel v. Kerwan Fin. Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006). These factors must be pled with particularity

---

[5]Fraudulent concealment is the converse of the discovery rule which acts to toll the accrual of the statute of limitations during the time in which the plaintiff is unable through reasonable diligence to discover the injury and its cause.

pursuant to Fed.R.Civ.P. 9(b). Kontonotas v. Hygrosol Pharm. Corp., 424 Fed. App'x 184, 187 (3d Cir. 2011).

In support of their fraudulent concealment theory, the plaintiffs in this case allege that "since at least 1991, [the defendant] [has] been aware that chemicals and products it used at Hazleton created occupational exposure to workers and their cohabiting family members" and that the defendant "has known or should have known that such exposure was unknown to Plaintiffs and Class Members." Despite this, the plaintiffs allege that the defendant "did not take adequate precautions to prevent or limit exposure or warn Plaintiffs and Class Members of their increased risk of contracting serious latent diseases."

Even accepting the plaintiffs' allegations as true, these allegations are insufficient to demonstrate that the defendant committed an affirmative independent act of concealment. See Baselice v. Franciscan Friars Assumption, 879 A.2d 270, 278 (Pa. Super. 2005) ("in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied); Kingston Coal Co. v. Felton Min. Co., 690 A.2d 284, 291 (Pa. Super. 1997) (same); Arndt v. Johnson & Johnson, ___ F.3d ___, 2014 WL 7177348, *5 (E.D. Pa. Dec. 17, 2014) (allegations that the defendants "intentionally hid" a defect was insufficient to plead fraudulent concealment). To this extent, there is nothing in the plaintiffs' allegations

which demonstrates that the defendant's failure to warn caused the plaintiffs to relax their vigilance or deviate from their right of inquiry. See Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270, 278 (Pa. Super. 2005) ("Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statue of limitations."). Mere non-disclosure is not a misleading act for purposes of tolling the statute of limitations. See Cunningham v. M & T Bank Corp., 2015 WL 539761 (M.D.Pa. Feb. 10, 2015) (citations omitted).

Furthermore, the plaintiffs' complaint does not plausibly allege that the defendant's acts or omissions prevented them from recognizing the validity of their claim within the limitations period. "[T]he fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." Mest v. Cabot Corp., 449 F.3d 502, 516 (3d Cir. 2006) (citing Bohus v. Beloff, 950 F.2d 919, 925-26 (3d Cir. 1991)). In determining whether the statute of limitations is tolled based on a theory of fraudulent concealment, the court should consider that "it is the duty of a party asserting a cause of action to use all reasonable diligence to be informed of the facts and circumstances upon which a potential right of recovery is based to institute suit within the prescribed statutory period." Vojtasek v. Allentown, 916 A.2d 637, 641 (Pa. Super. 2006). "There are very few facts which diligence cannot

discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." Vernau v. Vic's Mkt., Inc., 896 F.2d 43, 46 (3d Cir. 1990).

Here, the plaintiffs worked at a facility which obviously manufactured products made from VC and PVC, among other chemicals. The plaintiffs' own complaint references various articles and studies dating as far back as the 1980's which discuss the dangers of exposure to VC and PVC. In fact, citing to a study from 1984, the plaintiffs acknowledge that "[t]he toxicity of VC and PVC is well-studied and well-documented in medical literature around the world. Studies have shown increased incidences of skin, lung, colon and thyroid cancer among workers who work with VC and PVC as compared with the general population." The plaintiffs have failed to allege how the defendant's failure to warn them of the hazards of exposure to VC and PVC prevented them from learning what was admittedly "well-studied" and "well-documented" since at least as far back as the 1980's.

Finally, while the plaintiffs contend in their brief opposing the defendant's motion to dismiss that they conducted a reasonable investigation with respect to their claims, there are no allegations whatsoever in the complaint regarding what actions the plaintiffs took in order to satisfy their burden of establishing reasonable due diligence to uncover the facts which underlie their claim. Thus, the plaintiffs' pleading is also deficient in this respect.

In light of all of the above, the court finds that the plaintiffs have failed to sufficiently plead a theory of fraudulent concealment. In the alternative, in their brief opposing the defendant's motion to dismiss, the plaintiffs argue that the discovery rule operates to toll the statute of limitations. As discussed above, the statute of limitations for a medical monitoring claim accrues "when the plaintiff was placed at a 'significantly increased risk of contracting a serious latent disease.'" Barnes, 984 F.Supp. at 859. The statute of limitations in a medical monitoring case may be tolled by the discovery rule "to reflect the 'plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence.'" Barnes v. American Tobacco Co., 984 F.Supp. 842, 861-62 (E.D.Pa. 1997). Under the discovery rule, the statute of limitations begins to run when a plaintiff knows, or in the exercise of reasonable diligence should have known: (1) that he has been injured and (2) that his injury has been caused by another's conduct. Bradley v. Ragheb, 633 A.2d 192, 194 (Pa. Super. 1993) (citations omitted). "The party seeking to invoke the discovery rule is under a heavy burden of inquiry." Brunea v. Gustin, 775 F.Supp. 844, 846 (W.D.Pa. 1991).

In this case, the plaintiffs argue that the statute of limitations should be tolled by the discovery rule because the information necessary to make them aware of their medical monitoring claim was "not 'knowable' to Plaintiffs" until

some time after their exposure.[6] As discussed above, however, the plaintiffs' own complaint acknowledges that the risks of working with VC and PVC were known as early as the 1980's. In fact, OSHA regulations relating to the requirements for the control of employee exposure to VC were published as early as 1974. In order for the discovery rule to apply in this case, the plaintiffs must not have known about any of the dangers of being exposed to VC and PVC prior to May 2013, or two years before they filed their claim. The plaintiffs' own allegations reflect that these dangers were widely known, "well-researched" and "well-developed" well before May 2013. The discovery rule extends the date that the limitations period begins to run until the date "the plaintiff first knows, or reasonably should know, that s/he has been injured and that his/her injury has been caused by another party's conduct." Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). The plaintiffs' injury in this case came when they were placed at a significantly increased risk of contracting a serious latent disease. The statute of limitations would then have begun to run when the plaintiffs possessed sufficient facts to put them on notice that they were being exposed to dangerous chemicals and that they needed to investigate to determine whether they were entitled to redress. Id. at 542-43. The plaintiffs were certainly aware that they were working with and

[6]Neither the plaintiffs' complaint nor their opposing brief specify when they obtained the information necessary to make them aware of their claim; however, it is presumed it is on the unspecified date on which they obtained the MSDSs.

being exposed to VC and PVC. Given the publicly available information, as relayed in the plaintiff's own complaint, related to the risks of exposure to VC and PVC, the court finds that the plaintiffs were on notice well before May 2013 that they should investigate any potential claims relating to exposure to VC and PVC. There is no indication from the plaintiffs' complaint that they exercised their due diligence to investigate any potential claim relating to their exposure to VC and PVC. The court finds, therefore, that the discovery rule does not operate to toll the statute of limitations in this case.[7]

As discussed above, if a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6), the plaintiff must be given an opportunity to cure any deficiencies unless such an amendment would be inequitable or futile. While the court has determined that dismissal is appropriate based upon the plaintiffs' failure to properly allege that the statute of limitations should be tolled under either a fraudulent concealment theory or under the discovery rule, the defendants have also raised challenges to the merits of the plaintiffs' medical monitoring claim which may very well have merit. If the plaintiffs choose to file an amended complaint to attempt to cure the deficiencies related to the statute of limitations issue, they will also be required to address

---

[7] Although the reasonableness of a plaintiff's actions is normally one for the jury, the issue may be resolved on a motion to dismiss as a matter of law when no reasonable jury could reach a contrary decision. Bootay v. KBR, Inc., 2010 WL 1257716, at *6 (W.D. Pa. Mar. 26, 2010) (citations omitted), *aff'd*, 437 Fed. App'x 140 (3d Cir. 2011).

the issues related to the merits of their medical monitoring claim in order to assure that the amended complaint contains sufficient factual allegations to render their claim plausible as is required under both Iqbal and Twombly.

Based upon the foregoing, an appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 25, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1303-01.wpd